UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHANA VILLERE | CIVIL ACTION |
| VERSUS | NO: 24-00708 |
| SOCIAL SECURITY ADMINISTRATION | SECTION: "O" (4) |

**REPORT AND RECOMMENDATION**

**I.    Introduction**

The claimant, Shana Villere ("Villere"), seeks judicial review pursuant to **Title 42 U.S.C. § 405 (g)** of the final decision of the Commissioner of Social Security. The matter was referred to the undersigned United States Magistrate Judge pursuant to **Title 28 U.S.C. § 636(b)** and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

**II.   Facts and Background**

Villere protectively filed an application for Disability Insurance Benefits and Title II application for a Period of Disability on July 6, 2021, claiming the onset of a disability as of June 1, 2020. R. Doc. 7 at 213. Villere claimed disability due to migraine, anxiety, hypertension, depressive bipolar, and diabetes. *Id*. at 23. Villere was forty-five (45) years old at the time she filed the subject application and was a "younger individual" according to the regulations. *Id*. at 32.

Villere's application was denied at the initial level, and she filed a timely request for video hearing during COVID-19. R. Doc. 7 at 171. On April 19, 2023, a hearing was held before Administrative Law Judge ("ALJ") Karen Wiedmann. *Id*. at 20. The ALJ found that Villere met the insured status requirements through December 31, 2024. *Id*. at 22.

The ALJ found that Villere has not engaged in substantial gainful activity since June 1, 2020, the alleged onset date. R. Doc. 7, Finding 1, at 23. The ALJ further found that Villere had severe impairments consisting of chronic migraine without aura, complicated migraine, hemiplegic migraine, seizure, depression, and generalized anxiety disorder. *Id.*, Finding 2, at 23. However, the ALJ further found that Villere does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments under 20 CFR Part 404, Subpart P, Appendix 1. *Id.*, Finding 3, at 23-26.

The ALJ found that Villere had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitation of avoiding all exposure to hazards in the workplace, such as dangerous moving machinery and unprotected heights. R. Doc. 7, Finding 5, at 26-31. The ALJ found that Villere was able to understand, remember, and follow simple and familiar detailed instructions, remember locations and work-like procedures, maintain sufficient attention and concentration to perform simple and familiar detailed tasks, and sustain a routine without special supervision. *Id.*

The ALJ found that Villere retains the ability to perform activities within a schedule, maintain regular attendance, make work-related decisions, be aware of normal hazards, travel to unfamiliar places, and set realistic goals. R. Doc. 7, Finding 5, at 26-31. The ALJ found that Villere would likely do better in a setting requiring minimal public interactions, i.e. occasional interaction, and may work better with things rather than people. *Id.* The ALJ found that Villere can adapt to routine and predictable changes in the workplace and would do best in a low-stress environment without changing demands or quotas. *Id.*

The ALJ found that Villere is unable to perform any relevant work, such as her past relevant work as a floral designer, manager of a Financial Institute, and Vice President of Financial Institute. R. Doc. 7, Finding 6, at 31. The ALJ found that on the alleged disability date, Villere was forty-five (45) years old and a "younger individual" age 18-49 with a high school education. *Id.*, Finding 7 & 8, at 32. The ALJ further found that the transferability of job skills was not material to the determination of disability because using the Medical Vocational Rules supported a finding that Villere was not disabled regardless of whether Villere had transferable job skills. *Id.*, Finding 9, at 32. Finally, the ALJ found that there are a significant number of jobs in the national economy that Villere could perform at her age, education, work experience, and residual functional capacity. *Id.*, Finding 10, at 32.

The Appeals Council rejected Villere's request for review on January 25, 2021. R. Doc. 7 at 6. On March 20, 2024, Villere filed the subject matter seeking a judicial review of the denial of her claim. R. Doc. 1.

On review, Villere seeks a reversal of the ALJ's decision. R. Doc. 1. First, Villere contends that the ALJ failed to explain her consideration of the supportability and consistency factors in evaluating the medical opinion evidence. R. Doc. 8 at 2. Second, Villere contends that the ALJ erred because she ignored statements from third parties as to the severity of Villere's impairments. *Id*. Third, Villere contends that the ALJ failed to document Villere's documented reasons for a gap in treatment, thereafter failing to develop the record. *Id*.

### III.  **Standard of Review**

The role of the Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether

the Commissioner used the proper legal standards to evaluate the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary. *Brown,* 192 F.3d at 496. If supported by substantial evidence, then the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). *See also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *See Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995). It is more than a mere scintilla and less than a preponderance." *Ripley,* 67 F.3d at 555. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found when there is only a "conspicuous absence of credible choices" or "no contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

A single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Evidence is not substantial if it is overwhelmed by other evidence, particularly that offered by treating physicians. *Kent,* 710 F.2d at 114.

**IV.   Analysis**

    **A.   Supportability and Consistency Factors**

Villere contends that remand is required because the ALJ failed to explain her consideration of the supportability and consistency factors in evaluating the medical opinion evidence. R. Doc. 8 at 2. Villere contends that the ALJ rejected every aspect of the medical opinion

provided by Dr. Rex. S. Hauser, Villere's treating neurologist since 2021, which stated that Villere could not successfully engage in full-time competitive work. *Id.* Villere further contends that the ALJ did so on legally insufficient grounds, thus warranting a remand. *Id*.

The Commissioner contends that the ALJ Properly considered the medical source opinions. R. Doc. 9 at 9. The Commissioner further contends that the ALJ's decision should be affirmed. *Id*.

Under the regulations applicable to claims filed on or after March 27, 2017, such as this one, the Commissioner no longer defers to medical opinions nor gives them any specific evidentiary weight. *See* 20 C.F.R. §§ 404.1520c(a). Instead, the Commissioner assesses the persuasiveness of medical opinions according to five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, including familiarity with other evidence in the claim or an understanding of the agency's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

Of the five factors, supportability and consistency are the most important, even more so than the source of the opinion. *See* 20 C.F.R. § 404.1520c(a), (b)(2). "Supportability" concerns the degree to which a medical opinion is supported by objective medical evidence and supporting explanations: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions(s) ... the more persuasive the medical opinion(s) ... will be." *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); *see also* Revisions to Rules, 82 Fed. Reg. at 5853 (defining supportability as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation").

"Consistency" measures the degree to which a medical opinion is consistent with the evidence from other medical and non-medical sources: "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *see also* Revisions to Rules, 82 Fed. Reg. at 5853 (defining consistency as "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim"). In essence, "Consistency" is an external check that references evidence from other medical and nonmedical sources. *Id.* Therefore, each of these factors requires some comparison of the medical opinions to other medical evidence of record.

"The ALJ must articulate his [or her] consideration of the medical opinion evidence, including how persuasive he [or she] finds the medical opinions in the case record." *See Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. Jan. 26, 2021). However, the ALJ is generally required to articulate and explain only the consideration of the supportability and consistency factors, not the others. *See* 20 C.F.R. § 404.1520c(b)(2). Nonetheless, if the ALJ finds that two or more medical opinions on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must articulate the consideration of the other most persuasive factors. *See* 20 C.F.R. § 404.1520c(b)(3). The Commissioner "will explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings[.]" *See* 20 C.F.R. § 404.1520c(b)(2).

### 1. Dr. Hauser's Opinion

The ALJ found that on August 23, 2021, Villere went to Dr. Rex S. Hauser ("Dr. Hauser") for evaluation of right-sided numbness which began intermittently about every two weeks and

6

upon presentation occurred two to three times per week. R. Doc. 7 at 28-29. The ALJ noted that Villere described the episodes to Dr. Hauser as strings with mental fog, confusion, difficulty speaking, and difficulty word finding. *Id.* The ALJ noted Villere had further described that after about ten minutes, the numbness to the right side of her face would spread to the right side of her body and that these episodes could last a few hours to a full day. *Id*. The ALJ noted that Villere reported occasional headaches after the episodes, and that Dr. Hauser prescribed Villere medication after assessing her complicated migraine with aura, not intractable, without status migrainosus, and hemiplegic migraine. *Id*.

The ALJ further noted that Dr. Hauser examined Villere again on November 1, 2021, and that Villere's spells were down to once per week instead of two to three times at the time. R. Doc. 7 at 29. The ALJ noted that Dr. Hauser prescribed Villere Topamax and assessed her complicated migraine and hemiplegic[1] migraine. *Id.* The ALJ also noted that Villere returned to Dr. Hauser again on December 13, 2021, when Dr. Hauser advised Villere that she was taking Topamax wrong and Villere reported feeling better until recently when her usage of Prozac increased. *Id.*

The ALJ noted that at this appointment on December 13, 2021, Villere reported episodes of numbness about once per week that lasted an hour instead of all day, and denied any new numbness, paresthesia, weakness, or changes to her vision or speech. R. Doc. 7 at 29. Additionally, the ALJ noted that Dr. Hauser reported recurrent spells of confusion, dysphasia, right sided paresthesia, weakness, headaches, complicated migraine, and hemiplegic migraine. *Id*.

---

[1] A hemiplegic migraine is a type of migraine headache that causes migraine symptoms and muscle weakness on one side of the body. Muscle weakness usually starts during the aura phase of a migraine, right before or during a headache attack. Muscle weakness may be accompanied by sensory, vision or speech changes. https://my.clevelandclinic.org/health/diseases/hemiplegic-migraine.

The ALJ further noted that Villere returned to Dr. Hauser on March 14, 2022, and reported a decrease in episodes to once every other week since using Topamax. R. Doc. 7 at 29. The ALJ noted that Villere reported less intense episodes, denied side effects from medication, and asserted that she was considering reducing her use of Prozac. *Id.* The ALJ also noted that Dr. Hauser continued to assess chronic migraine without aura, complicated migraine, hemiplegic migraine, and seizure. *Id.* The ALJ also noted that Villere was prescribed a monthly injectable medication for migraines but no treatment for seizure. *Id.*

The ALJ noted that after a gap in treatment, Villere returned to Dr. Hauser and reported episode frequency about once per week that was not as intense as prior episodes, along with headaches and fatigue the following day. R. Doc. 7 at 29-30. The ALJ noted that Dr. Hauser continued to assess chronic migraine without aura, complicated migraine, hemiplegic migraine, and seizure. *Id.* The ALJ noted that medication was again continued for migraines with no treatment prescribed for seizures. *Id.*

The ALJ continued to summarize Dr. Hauser's treatment history, noting that Dr. Hauser had provided treatment to Villere for chronic, complicated migraines weekly since August 2021. R. Doc. 7 at 30. The ALJ pointed out that Dr. Hauser reported that Villere experienced numbness and paresthesia on the left side of the body, confusion/cognitive impairment, and extreme fatigue and somnolence[2] with confusion and fatigue that persisted for a day or two. *Id.* The ALJ further noted that according to Dr. Hauser, Villere developed depression due to her migraine disorder, would miss two or three days per month, could not lift more than ten pounds, and would not be

---

[2] Somnolence, defined as a state of drowsiness or strong desire to fall asleep, may be characterized as either a benign symptom, such as a state of drowsiness prior to falling asleep or, most commonly, as a symptom of an underlying condition, such as a sleep disorder, anxiety, depression, or stress.   https://www.osmosis.org/answers/somnolence.

capable of maintaining punctuality and attendance. *Id.*

The ALJ concluded that she did not find Dr. Hauser's opinion persuasive. R. Doc. 7 at 30. The ALJ noted that the opinion was supported by reports of Villere's episodes occurring three or more days per week but found that Dr. Hauser's opinion was not consistent with the record as a whole. *Id.* In support, the ALJ noted that Dr. Hauser's more recent notes indicate that Villere reported episodes only about once per week. *Id.* The ALJ also found that there was a gap in treatment which, according to the ALJ, tends to indicate improved functioning. *Id.*

Upon review, remand is warranted. As noted above, an ALJ is required to articulate their consideration of whether a medical source's opinion: (1) is supported by the source's own records and explanations; and (2) is consistent with the other evidence in the record. *See* 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). Because there is no bright line rule for articulating the consideration of the supportability and consistency factors, the ALJ's persuasiveness evaluation quoted above technically adhered to the new regulation requirements because the ALJ articulated their consideration of these factors. *See* 20 C.F.R. §§ 404.1520c(a)–(b)(2), 416.920c(a)–(b)(2); Revisions to Rules, 82 Fed. Reg. at 5854 (noting "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim").

However, judges have questioned in the past whether dedicating a single sentence to a factor provides a "narrative discussion" that adequately explains the ALJ's reasoning. *See Flattery v. Comm'r of Soc. Sec. Admin.*, No. 9:20-CV-02600-RBH-MHC, 2021 WL 5181567, at *6 (D.S.C. Oct. 21, 2021), report and recommendation adopted sub nom. *Flattery v. Kijakazi*, No. 9:20-CV-02600-RBH, 2021 WL 5180236 (D.S.C. Nov. 8, 2021). In this case, the ALJ's persuasiveness evaluation—in which they dedicated two sentences to articulate their consideration of both

factors—fails to provide a narrative discussion of the evidence considered and is not subject to meaningful review.

As an initial matter, the undersigned notes the problem with considering the supportability and consistency factors in a single sentence: the consistency factor encompasses an outward facing inquiry on whether a medical source's opinion is consistent with the evidence from other medical sources and nonmedical sources, while the supportability factor encompasses an inward facing inquiry on whether the medical source's conclusions are supported by his or her own relevant medical evidence and explanations. *See* Revisions to Rules, 82 Fed. Reg. at 5853; 20 C.F.R. §§ 404.1520c(c)(1)–(2); 416.920c(c)(1)–(2). That is, each factor necessarily requires an ALJ to look at specific evidence that only pertains to one factor. For example, when considering whether a medical source's opinion is supported by his or her own treatment notes and explanations, a different doctor's treatment notes are irrelevant to that inquiry.

In this case, the ALJ only conducted the supportability factor analysis as they did the inward facing inquiry looking at Dr. Hauser's medical opinion's consistency with his own medical record evidence. R. Doc. 7 at 28-30. The opinion is devoid of any outward look at other medical sources and non-medical sources and therefore failed to articulate the consistency factor. *See Patterson v. Comm'r of Soc. Sec. Admin.,* 846 F.3d 656, 663 (4th Cir. 2017) (noting the "all too common" problem of ALJs failing to show their work when evaluating claims for social security disability benefits). While the Commissioner attempts to explain the ALJ's decision and provide support for the consistency finding, the regulations require the ALJ to do so, which was not done in this case. R. Doc. 9 at 4-6. Therefore, remand is required.

On remand, the ALJ should provide a narrative discussion that thoroughly explains their persuasiveness evaluation and explicitly addresses the supportability and consistency factors. *See Rosa M. v. Kijakazi*, No. 9:22-cv-04494-BHH-MHC, 2023 WL 9101308 (D.S.C. Dec. 8, 2023).

### 2. *Dr. Sentell's Opinion*

Villere also challenges the ALJ's partial acceptance of the medical opinion provided by Dr. S. Webb Sentell, which the ALJ found to be "partially persuasive because it is supported by the examination, but other evidence is consistent with a different degree of other limitation." R. Doc. 8 at 6. *See* R. Doc. 7 at 31. Villere contends that the ALJ did not identify any supporting evidence from Dr. Sentell's examination of any other evidence which was allegedly consistent with a different degree of limitations. *Id.*

The Commissioner contends that the ALJ discussed her reasons for finding Dr. Sentell's opinion partially persuasive. R. Doc. 9 at 7. Therefore, the Commissioner contends that the ALJ's opinion is based on substantial evidence. *Id.*

Dr. S. Webb Sentell ("Dr. Sentell"), a consultative clinical neuropsychologist, conducted a clinical interview and mental status examination of Villere after referral by a Social Security Disability. R. Doc. 7-1 at 139-142. The record indicates that behavioral observations were limited due to telehealth video platform. *Id.* at 140. The ALJ noted that Dr. Sentell opined that Villere could repeat, remember, comprehend, and follow simple instructions. R. Doc. 7 at 31.

The ALJ noted that Dr. Sentell had determined that Villere handled complex instructions and completed complex tasks, and that Villere's attention and concentration were within normal limits. R. Doc. 7 at 31. Dr. Sentell also found that Villere's pace was within normal limits, and that she could experience moderate limitations with social interactions in a traditional work setting. *Id.*

11

The ALJ noted that Dr. Sentell concluded that Villere could likely tolerate traditional eight-hour workday stressors and that she is competent to manage funds. *Id.* Consequently, the ALJ found that Dr. Sentell's opinion was partially persuasive because it is supported by the examination but concluded that other evidence is consistent with a different degree of other limitations. *Id*.

Like the analysis involving Dr. Hauser, the ALJ's analysis as to Dr. Sentell does not adequately explain the consistency factor which encompasses an outward facing inquiry on whether a medical source's opinion is consistent with the evidence from other medical sources and nonmedical sources. In fact, the only explanation offered is that Dr. Sentell's opinion was supported by the examination. R. Doc. 7 at 31. As to the consistency, the only statement offered is that "other evidence is consistent with a different degree of other limitation." *Id.* The ALJ offered no record references to support this conclusion, thus requiring a remand. *Id.*

On remand, the ALJ should provide a narrative discussion that thoroughly explains their persuasiveness evaluation and explicitly addresses the supportability and consistency factors. *See Rosa M. v. Kijakazi*, No. 9:22-cv-04494-BHH-MHC, 2023 WL 9101308 (D.S.C. Dec. 8, 2023).

The Court does not reach the remaining issues.

V.  **Conclusion**

**IT IS RECOMMENDED** that the Administrative Law Judge's decision be **REVERSED AND REMANDED for further review, consistent with this opinion.**

A party's failure to file written objections to the Proposed Findings, Conclusions, and Recommendation in a Magistrate Judge's Report and Recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the District Court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

        New Orleans, Louisiana, this 27<u>th</u> day of August 2024.

        **KAREN WELLS ROBY**
        **UNITED STATES MAGISTRATE JUDGE**